UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-0

FRED NEKOUEE, individually,                    :
                                               :
                    Plaintiff,                 :
                                               :
vs.                                            :
                                               :
WAFFLE HOUSE, INC., a Georgia                  :
corporation,                                   :
                                               :
                    Defendant.                 :
_____:

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other

mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues

the Defendant, WAFFLE HOUSE, INC., a Georgia corporation (sometimes referred to as

"Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to

the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County

of Hillsborough.

2.      Defendant' property, a Waffle House restaurant, is located at 3811 Highway 119 at

I-25, Longmont, Colorado 80504, in Weld County ("Waffle House").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district

of the situs of the property.   The Defendant's property is located in and does business within this

judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      Fred Nekouee has visited the property which forms the basis of this lawsuit on August 2, 2018 and February 6, 2019, and he bought goods and sought to avail himself of the services at Waffle House on such dates.

8.      Fred Nekouee attended a heavy equipment auction in the area on October 3, 2018, and he visited Rocky Mountain National Park on October 2, 2018.

9.      Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property.

10.      The Plaintiff has definite plans to return to the area and to the Waffle House in early May of 2019.

11.      Waffle House is close to the hotels he stays at in the area and is close to the heavy equipment auction and dealerships he visits.

12.      The Plaintiff likes the menu and food at Waffle House, and since Waffle House is a chain, he generally knows the quality of its food and prices.

13.      The Plaintiff plans to return to Waffle House to enjoy its food again.

14.     For the reasons set forth in paragraphs 6-13 and 27, Fred Nekouee plans to return to the Waffle House

15.     The Plaintiff has encountered architectural barriers at the subject property.

16.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms in Waffle House

17.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

18.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

19.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

20.     On his visit to the Waffle House, the Plaintiff encountered excessively steep slopes in its parking lot.

21.     The Plaintiff encountered and observed barriers to access the men's restroom in Waffle House; and so, he also tried to use the women's restroom, in which women's restroom he also encountered and observed barriers to access.

22.     The Plaintiff is deterred from visiting the Waffle House even though he enjoys its food, because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

23.     Defendant owns, leases, leases to, or operates a place of public accommodation (restaurant) as defined by the ADA, 42 U.S.C. § 12181(7)(B), and the regulations implementing

the ADA, 28 CFR 36.201(a) and 36.104.

24.     Defendant is responsible for complying with the obligations of the ADA.

25.     The place of public accommodation that the Defendant owns, operates, leases or leases to is Waffle House

26.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 30 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

27.     Fred Nekouee desires to visit the Waffle House not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

28.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

29.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

30.     Preliminary inspections of the Waffle House have shown that violations exist. The violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a.   (i) In the parking lot serving Waffle House, there are no parking spaces for disabled patrons with van accessible signage, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (ii) The photograph below shows that the two parking spaces serving disabled patrons in the parking lot do not have van accessible signage.   (iii) In this parking lot, there are no parking spaces for disabled patrons with van accessible signage, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iv) The Plaintiff observed this lack of van accessible signage and it deters him from visiting this Waffle House.   (v) The action required to install van accessible signage is easily accomplish able and able to be carried out without much difficulty or expense.



b.   (i) In the parking lot serving Waffle House, the two parking spaces for disabled patrons do not have the signage and international symbol of accessibility on sign posts. (ii) As shown in the photograph above in subparagraph (a), these two parking spaces do

not have the signage and international symbol of accessibility on sign posts.   (iii) These two parking spaces for disabled patrons do not have the signage and international symbol of accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   (iv) The Plaintiff observed this lack of signage, and it made it very difficult for him to locate an accessible parking space, and this lack of signage deters him from visiting Waffle House.   (v) The action required to install signage is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) In the parking lot serving Waffle House, there is no access aisle for one of the two parking spaces for disabled patrons.   (ii) As shown in the photograph in subparagraph (a) above, there is no access aisle for one of the two parking spaces for disabled patrons. (iii) There is no access aisle for one of these two parking spaces for disabled patrons, in violation of Federal Law 2010, ADAAG §§ 502.1 and 502.3.3.   (iv) Due to the lack of an access aisle, the Plaintiff had difficulty unloading from and loading back into his vehicle while parked in this space without an access aisle.   (v) The action required to add an access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) In the parking lot, the back section of the parking space for disabled patrons without an adjacent access aisle has a running slope as steep as about 1:27 (3.7%) and steeper than the a running slope of 1:48 (2%).   (ii) This back section of the parking space for disabled patrons has a running slope steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered this slope and it made his wheelchair unstable while getting in and out of his vehicle.   (iv) The action required to reduce the slope in this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

e.  (i) From the parking lot, the change in level from the access aisle to the ramp on the accessible route to the restaurant entrance is about 1.5 inches and greater than 0.5 inches.   (ii) This change in level is in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change in level and he required assistance to move over it in his wheelchair.   (iv) The action required to reduce this change in level is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE DOOR AND INTERIOR SERVICE AREA**

f.  (i) The force needed to open the entrance door to Waffle House is about 10 pounds and greater than 5 pounds.   (ii) The force needed to open the entrance door to Waffle House exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) The Plaintiff encountered this condition, and due to the force necessary to open this entrance door, the Plaintiff required assistance to enter Waffle House.   (iv) The action required to adjust the force necessary to open this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

g.  (i) The jukebox in Waffle House has touch keys at about 51 inches above the floor and higher than 48 inches above the floor.   (ii) These touch keys are higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff tried but could not reach the touch keys on the upper level of this jukebox due to their height above the floor. (iv) The action required to lower the legs of this jukebox or to replace it is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM**

h.   (i) In the men's restroom in Waffle House, to operate the door lock on the entrance door requires tight grasping, pinching or twisting of the wrist.   (ii) To operate this door lock requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii)   The Plaintiff tried but could not operate this door lock with a closed fist or loose grip.   (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) In the men's restroom in Waffle House, the entrance door push side maneuvering clearance in a front approach is blocked by a trash can.   (ii) This door push side maneuvering clearance in a front approach beyond the latch and parallel to the doorway for a door with a latch and closer is less than the minimum required clearance of 12 inches since it is blocked by a trash can, in violation of Federal Law 2010, ADAAG § 404.2.4. (iii) Due to the location of a trash can near the push side of the entrance door to the restroom, the Plaintiff required assistance to maneuver his wheelchair to exit this restroom. (iv) The action required to put in place a written policy not to locate a trash can in this door's push side maneuvering clearance space is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) As shown in the photograph below, in the men's restroom in Waffle House, the flush control and pipes to the toilet are blocking access to the rear wall grab bar.   (ii) Access to the rear wall grab bar is blocked by the flush control and pipes to the toilet, in violation of Federal Law 2010, ADAAG §§ 604, 609.3 and 604.5.2.   (iii) Due to the location of this flush control and pipes to the toilet, the Plaintiff had difficulty using the rear wall grab bar to transfer himself from his wheelchair to the toilet.   (iv) The actions

required to relocate the flush control and pipes to this toilet are easily accomplishable and able to be carried out without much difficulty or expense.



k.  (i) As shown in the photograph below, the water supply and drain pipes under the sink in the men's restroom in Waffle House are not fully insulated.   (ii) The water supply and drain pipes under this sink are not fully-insulated, in violation of Federal Law 2010, ADAAG § 606.5   (iii) The Plaintiff used this sink, and due to the lack of insulation on the water supply and drain pipes under this sink, the Plaintiff risked skin burns and injury to his legs.   (iv) The action required to fully insulate the water supply and drain pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



l.   (i) As shown in the photograph below, in the men's restroom in Waffle House, the space between the top of the side wall grab bar and the bottom of the toilet paper dispenser above it is about 5 inches and less than 12 inches.   (ii) The space between the top of the this side wall grab bar and the toilet paper dispenser above it is less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3. (iii) Due to the small space between the top of this side wall grab bar and the bottom of the toilet paper dispenser above it, the Plaintiff had great difficulty using the side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.



m.   (i)   The distance from the centerline of the toilet to the side wall in the men's restroom in Waffle House is not between 16 inches and 18 inches and is more than 18 inches.   (ii) The distance from the centerline of this toilet to the side wall is not between a minimum of 16 inches (405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2.   (iii)   Due to the distance from the centerline of this toilet to the side wall, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) As shown in the photograph below, the toilet in the men's restroom in Waffle House does not have the flush control mounted on the open and wide side of the clear floor space.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.6.   (iii) Due to the location of the flush control on this toilet, the Plaintiff could not flush the toilet from his wheelchair.   (iv) The action required to relocate the flush control on this toilet is

easily accomplishable and able to be carried out without much difficulty or expense.



o.  (i) In the men's restroom in Waffle House, the turning space between the urinal rim and the toilet is about 46 inches in diameter and less than 60 inches in diameter.   (ii) This turning space   between the urinal rim and the toilet is less than the minimum required diameter of 60 inches (1525 mm), in violation of Federal Law 2010, ADAAG §§ 304.3.1 and 304.3.2.   (iii) The Plaintiff encountered this turning space diameter, and it made it very difficult for him to maneuver his wheelchair to use the toilet and to move away from the toilet in his wheelchair.   (iv) The action required to relocate the urinal to provide an adequate turning space diameter is easily accomplishable and able to be carried out without much difficulty or expense.

p.  (i) In the men's restroom in Waffle House, the space between the top of the rear wall grab bar and the bottom of the liquid soap dispenser is about 10 inches and less than

12 inches.  (ii) The space between this liquid soap dispenser and the top of this rear wall grab bar is less than the minimum space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.  (iii) The Plaintiff encountered this condition and it made it difficult for him to use the rear wall grab bar.  (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

q.  (i) In the men's restroom in Waffle House, the rear wall grab bar does not extend at least 12 inches on one side and 24 inches on the other side from the centerline of the toilet.  (ii) This rear wall grab bar does not extend a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side from the centerline of the toilet, in violation of Federal Law 2010, ADAAG § 604.5.2.  (iii) The Plaintiff encountered this condition, and it made it very difficult for him to use the rear wall grab bar to transfer himself from his wheelchair to the toilet.  (iv) The action required to relocate or replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM**

r.  (i) In the women's restroom in Waffle House, to operate the door lock on the entrance door to the restroom requires tight grasping, pinching or twisting of the wrist.  (ii) To operate this door lock requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.  (iii)  The Plaintiff tried but could not operate this door lock with a closed fist or loose grip.  (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

s.  (i) In the women's restroom in Waffle House, the restroom door push side maneuvering clearance in a front approach beyond the latch and parallel to the doorway for a door with a latch and closer is only about 7 inches and less than 12 inches due to the location of the wall-mounted hairdryer.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) The Plaintiff encountered this lack of door push side maneuvering clearance in a front approach in his wheelchair, and it made it difficult for him to open this door to exit the restroom.   (iv) The action required to relocate the wall-mounted hand dryer to increase the door push side maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

t.   (i) In the women's restroom in Waffle House, the rear wall grab bar only extends about 16 inches on one side and about 20 inches on the other side from the centerline of the toilet.   (ii) This rear wall grab bar does not extend a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side from the centerline of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the position of this rear wall grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet.   (iv) The action required to relocate or replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the women's restroom in Waffle House, the flush control and pipes to the toilet are blocking access to the rear wall grab bar.   (ii) Access to the rear wall grab bar is blocked by the flush control and pipes to the toilet, in violation of Federal Law 2010, ADAAG §§ 604, 609.3 and 604.5.2.   (iii) Due to the location of this flush control and pipes to the toilet, the Plaintiff had difficulty using the rear wall grab bar to transfer himself from his wheelchair to the toilet.   (iv) The actions required to relocate the flush control

and pipes to this toilet are easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the women's restroom in Waffle House, the top gripping surface of the grab bars are about 37.5 inches above the floor.   (ii) The top gripping surfaces of the grab bars in the women's restroom are not between a minimum of 33 inches (840 mm) and a maximum of 36 inches (915 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 609.4.   (iii) Due to the height of these grab bars above the floor, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet and back again.   (iv) The action required to relocate these grab bars is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) The water supply and drain pipes under the sink in the women's restroom in Waffle House are not insulated.   (ii) As shown in the photograph below, the water supply and drain pipes under this sink are not insulated, in violation of Federal Law 2010, ADAAG § 606.5   (iii) The Plaintiff used this sink, and due to the lack of insulation on the water supply and drain pipes under this sink, the Plaintiff risked skin burns and injury to his legs. (iv) The action required to insulate the water supply and drain pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



**x.**   (i) In the women's restroom in Waffle House, the space between the top of the side wall grab bar and the bottom of the toilet paper dispenser above it is about 2 inches and less than 12 inches.   (ii) As shown in the photograph below, the space between the top of the this side wall grab bar and the toilet paper dispenser above it is less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3. (iii) Due to the small space between the top of this side wall grab bar and the bottom of the toilet paper dispenser above it, the Plaintiff had great difficulty using the side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.



y.  (i) In the women's restroom in Waffle House, the centerline of the toilet paper dispenser below the side wall grab bar is about 13 inches from the front of the water closet or toilet and not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is not between 7 and 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

z.  (i) In the women's restroom in Waffle House, the bottom edge of the mirror's reflecting surface is about 43.5 inches above the floor and higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010,

ADAAG § 603.3.   (iii) From his wheelchair, the Plaintiff could not see his full face in this mirror due to its height above the floor.   (iv) The action required to relocate this mirror so that the bottom edge of its reflecting surface is no more than 40 inches above the floor is easily accomplishable and able to be carried out without much difficulty or expense.

aa.  (i) The toilet in the women's restroom in Waffle House does not have the flush control mounted on the open and wide side of the clear floor space.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.6.   (iii) Due to the location of the flush control on this toilet, the Plaintiff could not flush the toilet from his wheelchair.   (iv) The action required to relocate the flush control on this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

31.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

32.    The discriminatory violations described in paragraph 30 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

33.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged

by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

34.     Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

35.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

36.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

37.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the

Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

38.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

39.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Waffle House restaurant and adjacent parking lot spaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require

the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*